IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 17-03544 (ESL) |
| JAIME LEOPOLDO VAZQUEZ BERNIER and CARMEN MERCEDES PAGAN ORTIZ | CHAPTER 13 |
| Debtors | |
| JAIME LEOPOLDO VAZQUEZ BERNIER; CARMEN MERCEDES PAGAN ORTIZ | |
| Plaintiffs | ADV. PROC. 20-00134 |
| vs. | |
| TREASURY DEPARTMENT OF PUERTO RICO ET. ALS. | FILED & ENTERED 11/21/2022 |
| Defendant | |

OPINION AND ORDER

The instant adversary proceeding is before the court upon the *Motion Requesting Entry of Summary Judgment*, filed by the defendant Treasury Department of the Commonwealth of Puerto Rico (hereinafter referred to as "Treasury") (Docket No. 33), the *Opposition to Motion for Summary Judgment* filed by Jaime Vazquez Bernier and Carmen Pagan Ortiz (hereinafter referred to as "Debtors" or "Plaintiffs") (Docket No. 65), Plaintiffs' cross Motion for Summary Judgment (Docket No. 57), and *Defendant's Response in Opposition to Plaintiffs' Motion Requesting Entry for Summary Judgment* (Docket No. 78).

For the reasons stated below, the Court grants in part and denies in part the *Motion for Judgment* filed by Treasury an denies the Plaintiffs' cross Motion for Summary Judgment.

**Jurisdiction**

-1-

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) & (O). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

**Procedural Background**

The Debtor filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on May 22, 2017 (Lead case, No. 17-03544, Docket No. 1). On August 25, 2017, Treasury filed proof of claim #5-1 in the amount of $96,732.47 of which $71,873.41 was listed as unsecured and the remainder $24,859.06 was listed as a priority unsecured claim pursuant to 11 U.S.C. §507(a)(8). On December 11, 2018, the Debtors and the Treasury filed a *Stipulation* and the same was approved on January 9, 2019 (Lead case, No. 17-03544, Docket Nos. 80 & 86). On April 25, 2019, the Chapter 13 reorganization plan dated January 23, 2019, was confirmed. (Lead case, No. 17-03544, Docket No. 113). Thereafter, on September 16, 2019, a discharge was granted to the Debtors pursuant to 11 U.S.C. §1328(a). (Lead case, No. 17-03544, Docket No. 116). Subsequently on October 30, 2020, the Debtors filed a *Motion to Reopen Case* under 11 U.S.C. §350(b) to file a complaint against Treasury for violation of the discharge order and the same was granted on November 24, 2020. (Lead case, No. 17-03544, Docket Nos. 126 & 129).

On November 25, 2020, the Debtors/Plaintiffs filed the instant adversary proceeding premised upon Treasury's alleged violation of the discharge injunction. (Docket No. 1). On February 25, 2021, Treasury filed its *Answer to Complaint* (Docket No. 9). On May 11, 2022, Treasury filed its *Statement of Uncontested Facts in Support of Motion for Summary Judgment* (Docket No. 32). Also, on said date, Treasury filed a *Motion Requesting Entry of Summary Judgment*. (Docket No. 33). On June 16, 2022, the Plaintiffs filed a cross *Motion for Summary Judgment* and the *Statement of Facts in Support of Motion for Summary Judgment* (Docket Nos. 57 & 58). On June 29, 2022, the Plaintiffs filed their *Opposition to Motion for Summary Judgment* and the *Opposition to Treasury Department's Statement of Uncontested Facts in Support of Motion for Summary Judgment*. (Docket Nos. 65 & 66). On June 30, 2022, Treasury filed a *Motion Submitting Exhibits Translated to the English Language*. (Docket No. 67). Thereafter, on August 22, 2022, Treasury filed its *Opposition to Plaintiffs' Statement of Uncontested Facts in Support of Motion*

*for Summary Judgment (Docket Entry No. 58)* (Docket No. 77). On August 22, 2022, the Defendant filed its *Response in Opposition to Plaintiffs' Motion Requesting Entry for Summary Judgment* (Docket No. 78).

The issue pending before the Court is whether Treasury violated the Plaintiffs' discharge injunction pursuant to 11 U.S.C. §524(a)(2). The Plaintiffs allege that Treasury engaged in four (4) independent acts which constitute collection activities in violation of the discharge injunction. The Plaintiffs contend that the alleged collection activities were the following: (i) Treasury charged Plaintiffs $800.00 as a penalty and/or sanction for the alleged pre-petition obligation; (ii) Defendant sent Plaintiffs post-discharge collection letters; (iii) post discharge Defendant continued to report and publish false and inaccurate Certificate of Debts which alleged that Plaintiffs continue to owe the pre-petition debt to Treasury. Each successive Certification of Debt that was issued by Treasury continued to accrue interest and increase the amounts allegedly owed; and (4) post- discharge for over one year, Treasury continue to report the discharged debt in the internal revenue unified system ("SURI"). (Docket No. 57, pg. 2).

## Uncontested Material Facts

After reviewing *Treasury's Statement of Uncontested Facts in Support of Motion for Summary Judgment* (Docket No. 32); *Plaintiffs' Opposition to Treasury Department's Statement of Uncontested Facts in Support of Motion for Summary Judgment* (Docket No. 66); *Plaintiffs' Statement of Facts in Support of Motion for Summary Judgment* (Docket No. 58) and *Defendant's Opposition to Plaintiffs' Statement of Uncontested Facts in Support of Motion for Summary Judgment* (Docket No. 77), the Court finds that the following material facts are uncontested:

1. Treasury was notified of Plaintiffs' bankruptcy petition since it was included in Schedule E/F of the voluntary petition as an unsecured claimant. (Lead case, Docket No. 13). On May 31, 2017, the Clerk filed a Certificate of Notice which evinces that Treasury was duly notified of the filing of the voluntary petition. (Lead case, Docket No. 10); See also Defendant's *Answer to Complaint* (Docket No. 9, pg. 3, paragraph 14).

2. Treasury filed proof of claim #5-1 on August 25, 2017, which includes an unsecured priority debt of $24,859.06 and a general unsecured debt of $71,873.41 for a total tax liability of $96,732.47. Refer

to claims registry in lead case, proof of claim #5-1 (Docket No. 32, Exhibit I).    3. The parties reached an agreement in which the Debtors/Plaintiffs would satisfy Treasury's priority claim #5-1 in a single lump sum payment in the amount of $24,859. The Stipulation was approved on January 9, 2019. The terms of the Stipulation were included in the January 23, 2019, Chapter 13 plan of reorganization which was confirmed on March 7, 2019.  (Lead Case, Docket Nos. 80, 86, 92 & 109).

4. On September 16, 2019, a discharge was granted to the Debtors pursuant to 11 U.S.C. §1328(a). Notification of the Discharge Order was duly sent to all creditors, and received by all creditors, and notice was mailed to Defendant's postal address. (Lead case, Docket Nos. 116 & 117) & Defendant's *Answer to Complaint* (Docket No. 9, pg. 4, paragraph 27).

5. The Treasury Department installed a new electronic platform named Internal Revenue Unified System (SURI for its acronym in the Spanish language) (Docket No. 32, Exhibit III- Internal Revenue Circular Letter No. 16-12-IR dated October 3, 2016).

6. SURI was installed in three phases, beginning in October 2016, the second phase in December 2018 and the third phase December 2019 which concluded on February 24, 2020 (Docket No. 32, Exhibit IV; Docket No. 67-1).

7. The taxpayers are supposed to create an account in SURI to manage their tax matters. (Docket No. 32, Exhibit V- Internal Revenue Circular Letter No. 18-16-IR dated December 6, 2018).

8. All the records, transactions, payments, letters, tax returns, certifications of the taxpayer are included in the taxpayer's SURI account. (Docket No. 32, Exhibits III, IV and V; Docket No. 67-1).

9. Plaintiffs/Debtors have a SURI account. (Docket No. 32, Exhibit VI).

10. There is a Notification and Request for Payment dated March 10, 2020, that appears in Plaintiff's Jaime L. Vazquez Bernier's SURI account. It has a watermark on all three pages that states "DRAFT" ("BORRADOR" in the Spanish language). (Docket No. 32, Exhibit VII; Docket No. 67-2).

11. The last page of the correspondence dated March 10, 2020, includes an "IMPORTANT NOTICE" which reads: "[t]he Department of Treasury has made a great effort to improve its electronic systems. Recently, the Treasury Department transferred the income tax account data from the previous

digital platform to the new integrated SURI system. As part of this transfer, we have identified outstanding debts that may not have been previously notified. To comply with our responsibility to keep you informed, this notice is issued to inform you of the debt that was transferred to SURI. It is in our best to keep our tax system accurate and up to date, so we encourage you to review the information provided in this notice and take the appropriate action as indicated on page 1 of this notice." (Docket No. 32, Exhibit VII, Docket No. 67-2).

12. Plaintiff Jaime Vazquez Bernier requested a renewal of the Merchant Registry Certification and Treasury issued said certification on March 30, 2020 (Docket No. 32, Exhibit IX).

13. Treasury did not record any lien on Plaintiffs/Debtors' real property or on their bank accounts.

### ***Position of the parties***

### *Treasury's position*

Treasury's position is that it did not send any collection letter to Plaintiffs via SURI demanding the payment of the discharged debt. Treasury contends that according to SURI there are no records of collection letters including the debt claimed in the Debtors' bankruptcy case. As detailed in the report of notifications sent by SURI, none of the documents sent by the system via email were collection letters. Treasury argues that the only document that refers to the totality of the debt that the system reflected is a Notification and Payment Requirement draft. Treasury's position is that the March 10, 2020, notification and payment requirement was not issued because it was a draft. The draft of the notification letter has three (3) pages. Moreover, no notification of lien or actual lien was ever recorded against any of the Plaintiffs' real property or their bank accounts because there were no collection efforts undertaken by Treasury. Therefore, no injury has occurred.

Treasury contends that the issuance of debt certifications is not an automatic process and the same has to be requested by the taxpayer for Treasury to proceed with the request. Moreover, Treasury did not report and/or publish to the world the Plaintiffs' tax debts. Pursuant to the Taxpayers' Bill of Rights, 13 L.P.R.A. §1001 et sec., Treasury does not publish any confidential information that belongs to a taxpayer

in its official webpage, newspapers, magazines, billboards, press, television programs, official Facebook page or any social media.

Treasury argues that, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm. In cases such as these where allegedly inaccurate or misleading information sits in a company database, the plaintiff's harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is. So too here." TransUnion LLC v. Ramírez, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021). Thus, the Plaintiffs lack Article III standing to bring this injunctive relief lawsuit because they did not suffer an injury in fact. In the instant case, the Plaintiffs have a SURI account, and they are the only persons that have access to this account, meaning that a third party cannot have access to the Plaintiffs' SURI account. Therefore, Treasury did not report to the world (or to any third parties) the Debtors' debts as they claim (allege). Moreover, Plaintiffs failed to evince that they lost business opportunities and suffered additional economic damages.

Treasury contends that the $800 penalty/sanction is not for the discharged debt. The penalty refers to a tax liability for the year 2019 which is a post-petition debt. The Plaintiffs have a record of belated filings and payments of their post-petition tax returns. (Docket No. 58, Exhibit G, items 19 & 20).

Lastly, Treasury requests that the Court strike the Plaintiffs' Exhibits A, B, D, E, F, and H because all of them are in the Spanish language. Treasury's argument is premised upon 48 U.S.C. §864, meaning that "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language." Local Rule 5 requires that, "[a]ll documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English prepared by an interpreter certified by the Administrative Office of the United States Courts." The United States Court of Appeals for the First Circuit requires strict enforcement of the English language requirement where the untranslated document is key to the outcome of the proceedings. Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F. 3d 58, 67 (1st Cir. 2008). Allowing non-English document would be "at odds with the premise of a unified and integrated federal courts system." Id. Therefore, district

courts should not consider such documents. González de Blasini v. Family Department, 377 F. 3d 81, 89 (1st Cor. 2004)." Plaintiffs have failed to comply with 48 U.S.C. §864, as well as L. Civ. R. 5. Thus, the Plaintiffs' Exhibits A, B, D. E, F and H should be stricken from the record. (Docket No. 78, pgs. 10-11).

*Debtors/Plaintiffs' position*

The Plaintiffs allege that Treasury engaged in four (4) independent acts which constitute collection activities in violation of the discharge injunction. The Plaintiffs allege that the collection activities were the following: (i) Treasury charged Plaintiffs $800.00 as a penalty and/or sanction for the alleged pre-petition obligation; (ii) Defendant sent Plaintiffs post-discharge collection letters; (iii) post discharge Defendant continued to report and publish false and inaccurate Certificate of Debts which alleged that Plaintiffs continue to owe the pre-petition debt to Treasury. Each successive Certification of Debt that was issued by Treasury continued to accrue interest and increase the amounts allegedly owed; and (4) post- discharge for over one year, Treasury continue to report the discharged debt in the internal revenue unified system ("SURI"). (Docket No. 57, pg. 2). The Plaintiffs contend that Treasury satisfies the three-pronged factor test that establishes that Treasury violated the discharge injunction because (i) Treasury had actual and constructive notice of Plaintiffs' discharge and the discharged debt; (ii) Treasury intended the acts which resulted in the violation of the discharge order; and (iii) Treasury's action improperly attempted to coerce or harass the Plaintiffs to make payments on the discharged debt. The Plaintiffs contend that the Defendant had actual and constructive notice of Plaintiffs' discharge. (Lead case, Docket No. 9, paragraph 27). As to the second prong of the test, "…it has been held that successive statements which increase the amount of the alleged debt satisfy the "intended action" prong of the violation of a discharge injunction." See Ramos v. Coop. de Ahorro y Credito Aguas Buenas (In re Ramos), 2021 Bankr. Lexis 2666 (Bankr. D.P.R. 2021). Similar to In re Ramos, the Plaintiffs argue that Treasury published and reported no less than three successive Certifications of Debt and that each successive certification increased the amount allegedly owed in particular the accrued interest and late charges. Plaintiffs contend that the March 10, 2020, Notification and Request for Payment is a collection letter which threatened legal action. The Debtors argue that the Defendant "intended the publishing of the information on SURI." (Docket No. 57, pg. 13, Docket No. 58,

-7-

Exhibit G, pg. 4, Response to Interrogatory #6). The Plaintiffs argue that both TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208-09, and Maddox v. Bank of N.Y. Mellon Trust, Co., N.A., 19 F.4th 58, 65 (2nd. Cir. 2021), "recognize that publication of false information causing reputational injury is a sufficiently concrete act to confer standing. Publication as pressure to pay is similarly 'concrete.'…" Anderson v. Credit One Bank, N.A. (In re Anderson), 641 B.R. 1 (Bankr. S.D.N.Y. 2022).

Lastly, the third prong the Plaintiffs need to establish is that the creditor acts in a way that improperly coerces or harasses the debtor. Plaintiffs argue that Treasury engaged in four different patterns of collection described herein; each of which individually and cumulatively, resulted in an undue attempt to coerce and harass the Plaintiffs into making payments on the discharged debt in violation of the discharge injunction. Plaintiffs argue that: (i) "the consequent imposition and publishing of an $800.00 penalty/sanction as a consequence for the non-payment of the previously discharged debt constitutes an attempt to coerce plaintiff onto making payments on the discharged debt" (Docket No. 57, pg. 14); (ii) that the March 10, 2020 is an explicit collection letter sent by Treasury which attempted to coerce the Plaintiffs into making payments on the discharged debt and threatened legal consequences for failure to make such payments; (iii) the three successive certifications of debt stated that Plaintiff should make a payment through the SURI system constitute an attempt to improperly coerce Plaintiff into making payments on a discharged debt. This clear demand for payment was accompanied by coercion in the form of a consequence for non-payment; to wit, the continuing increase in the amount of interest and late charges, by over 25% in less than one year; and (iv) Defendant violated the discharge injunction by failing to update its data collection platform, SURI, and this resulted in the issuing and publishing of successive debt certification letters that increased the amounts allegedly owed. Defendant failed to update SURI until after the Plaintiffs had filed the instant proceeding (Docket No. 58, Exhibit F). Treasury's failure to update the SURI system aggravated Treasury's efforts to collect the debt via the successive certifications of debt. The Plaintiffs also argue that Treasury's duties resemble those of a credit reporting agency, which can also be liable for failing to "follow reasonable procedures to assure maximum possible accuracy" of information on a credit report. 15 U.S.C. §1681e(b); 1681n, 1681o; Gross v. CitiMortgage, Inc., 33 F. 4th 1246 (9th Cir. 2022). The Debtors

argue that in In re Ramos, 2021 Bankr. Lexis 2666, *8, the Court held that, "… the Coop's failure to update the credit report, in conjunction with the Coop's mailing of credit card statements with increasing amounts allegedly owed, resulted in 'actions [that] have the effect of coercing the Plaintiff into payment of a discharged debt.'" (Docket No. 65, pg. 8). The Plaintiffs contend that Treasury through its actions of failing to correct the data in the SURI platform affirmatively attempted to collect on the pre-petition debt in violation of the discharge order.

The Plaintiffs further argue that the TransUnion LLC v. Ramirez case is inapposite to the instant proceeding because Article III standing, is no bar to a claim for injunctive relief. The Supreme Court's holding in TransUnion LLC v. Ramirez, as to Article III standing does not preclude Plaintiffs' injunctive claim against the Defendant. The Plaintiffs' position is that the holding in these cases does not apply to a claim for injunctive relief. (Docket No. 65, pg. 9).

### Applicable Law & Analysis

#### Standard of Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; see also, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202–203.

Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205–206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560–61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958, 111 S. Ct. 387, 112 L.Ed.2d 397 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325, 106 S.Ct. 2548. See also Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some

factual dispute does not defeat summary judgment. Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions, and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159, 90 S.Ct. 1598.

### *English Language Requirement in the Federal Courts in Puerto Rico*

The Court will begin its analysis with Treasury's argument as to its request to have Plaintiffs' Exhibits A, B, D, E, F and H which are in the Spanish language be stricken because they fail to comply with 48 U.S.C. §864[1], Local Civ. R. 5(c)[2] and P.R. LBR 9070-1(c)[3]. The United States District Court for the District of Puerto Rico recently dealt with this issue in Banco Popular de P.R. v. Santiago-Salicrup and its analysis which this Court adopts was the following:

"[i]t is well settled that the law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English. Estades-Negroni v. Assocs. Corp. of N. Am., 359 F. 3d 1, 2-3 (1st Cir. 2004) (citing 48 U.S.C. §864 (2003)). This rule necessarily extends to bankruptcy proceedings as well as bankruptcy appeals. In re Ortiz, 2014 Bankr. Lexis 4076, *2-3 (holding that U.S. Bankruptcy Courts

---

[1] 48 U.S.C. §864 provides, "[t]he laws of the United States relating to appeals, certiorari, removal of causes, and other matters or proceedings as between the courts of the United States and the courts of the several States shall govern in such matters and proceedings as between the United States District Court for the District of Puerto Rico and the courts of Puerto Rico. All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language." 48 U.S.C. §864.

[2] Local Civ. R. 5(c) provides: "[a]ll documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English which meets one of the following criteria: (1) is prepared by an interpreter certified by the Administrative Office of the U.S. Courts, or (2) is prepared by a translator who has approved Phase 1 (written legal translation) of the Federal Court Interpreters Certification Examination, or (3) is prepared by a translator who is certified by the American Translator Association, or who has a post-graduate degree from an accredited post-graduate education translation program; or (4) is otherwise stipulated as accurate by all parties."

[3] P.R. LBR 9070-1(c) regarding Exhibits provides: "Form of Exhibits. Copies of exhibits intended to be offered in a contested matter or hearing must be legible and copies of photographs must be in color, unless the original photograph is in black and white. Exhibits submitted in violation of this rule will not be admissible into evidence. All Exhibits and documentary evidence in Spanish or other language shall be fully translated to the English language by a certified translator.

-11-

are units of the U.S. District Courts. See 28 U.S.C. §151). Pursuant to Local Civ. R. 5, all documents to be considered by the Court must be in English or certified translations thereof. Similarly, P.R. LBR 9070-1 requires that '[a]ll exhibits and documentary evidence in Spanish or other language shall be fully translated to the English language by a certified translator.' The Bankruptcy Court for the District of Puerto Rico has been clear that '[a]ny evidence presented that does not comply with this rule will not be admitted into evidence.' Barbosa v. Banco Popular de P.R. (In re Gómez), 2014 Bankr. Lexis 4517, *8-9).

The United States Court of Appeals for the First Circuit requires strict enforcement of the English-language requirement 'where the untranslated document is key to the outcome of the proceedings.' Mendoza-Cardona v. Estado Libre Asociado de P.R., 59 F. Supp. 3d 309, 310 (D.P.R. 2014) (citing Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F. 3d 58, 67 (1ˢᵗ Cir. 2008)). As the First Circuit explained, allowing the outcome to turn on a non-English document would be 'at odds with the premise of a unified and integrated federal courts system.' Id (citing Dalmau, 544 F. 3d at 67). Therefore, district courts and bankruptcy courts alike—should not consider such documents. González De Blasini v. Family Dep't., 377 F. 3d 81, 89 (1ˢᵗ Cir. 2004)."

Banco Popular de P.R. v. Santiago-Salicrup, 630 B.R. 374, 378 (D.P.R. 2021).

Therefore, as explained herein, this Court grants Plaintiffs' request to have Plaintiffs' Exhibits A, D, E, F and H stricken because the same are in the Spanish language and are exhibits which are employed as evidence to support findings of alleged collection acts in violation of the discharge injunction, and thus at this juncture cannot be considered by this Court. However, Plaintiffs' Exhibit B which is similar (the first page) will not be stricken because Treasury referenced that same document in its *Statement of Uncontested Facts in Support of Motion for Summary Judgment* and provided a certified translation of the same. (Docket Nos. 32-7 & 67-2).

### ***Violation of the discharge injunction***

This court addressed the applicable law on violations of the discharge injunction in In re Laboy, 2010 WL 427780 (Bankr. D. Puerto Rico 2010) and In re McConnie, 543 B.R. 127 (Bankr. P.R. 2017).

In Laboy the court stated:

The effect of a bankruptcy discharge is that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The discharge injunction is the mechanism which allows the debtor to commence debt-free his or her fresh start. See In re Latanowich, 207 B.R. 326, 334 (Bankr.D.Mass.1997) ("The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial fresh start."); Green v. Welsh, 956 F.2d 30, 33 (2d Cir.19992); Baker v. Sommerville Mun. Fed. Credit Union (In re Baker), 2006 Bankr. Lexis 3183 (Bankr.D.Mass.2006). The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of

the Bankruptcy Code and thus, includes all types of collection activity such as; letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2] (15th ed.2009); Ung v. Boni (In re Boni ), 240 B.R. 381, 384 n. 5 (B.A.P. 9th Cir.1999). Moreover, "[c]reditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[b] (15th ed.2009); See In re Roush, 88 B.R. 163, 165 (Bankr.S.D.Ohio 1988); Faust v. Texaco (In re Faust ), 270 B.R. 310, 317 (Bankr.M.D.Ga.1998); In re Nassoko, 405 B.R. 515, 521 (Bankr.S.D.N.Y.2009). "Although, § 524(a) which establishes the discharge injunction, does not include a specific provision setting out available remedies for violations of the discharge injunction, bankruptcy courts invoke § 105(a), which grants bankruptcy courts broad equitable powers, to enforce the discharge injunction, using the mechanism of civil contempt action." Parker v. Boston Univ. (In re Parker ), 334 B.R. 529, 537–538 (Bankr.D.Mass.2005); See U .S. v. Rivera Torres (In re Rivera Torres ), 309 B.R. 643,647 (B.A.P. 1st Cir.2004); In re Pratt, 324 B.R. at 5; Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir.2000), cert. denied, 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001).

As to the standard to establish a violation of the discharge injunction the court held in Laboy that the standard for a willful violation of the discharge injunction under § 524(a)(2) is met if the defendant had knowledge of the discharge injunction and the same intended the actions which constituted the violation. See Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 268 (1st Cir.1999); In re Pratt, 462 F.3d at 21 (1st Cir.2006); Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2][c] (15th ed.2009).

In McConnie this court held that:

    A creditor violates the discharge injunction when it (i) has notice of the debtor's discharge; (ii) intends the actions which constitute the violation; and (iii) acts in a way that improperly coerces or harasses the debtor. In re Lumb, 401 B.R. at 6. In determining discharge injunction violations, the crucial issue is whether the creditor acted in such a way to *143 "coerce" or "harass" the debtor improperly. See Pratt v. GMAC (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006) (citing In re Diamond, 346 F.3d 224, 227 (1st Cir. 2003)). "Coercion is assessed under an objective standard, and the issue of whether a creditor acted in an objectively coercive manner is determined on the specific facts of each case." Bates v. CitiMortgage, Inc. (In re Bates), 517 B.R. 395, 398 (Bankr. D.N.H. 2014) (citing In re Pratt, 462 F.3d at 19)); See also: Quiles Aviles v. City of Philadephia Water Revenue Bureau, 532 B.R. 428, 436 (Bankr. D.P.R. 2015). "Thus, a debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor (citing In re Schlichtmann, 375 B.R. 41, 95 (Bankr. D. Mass. 2007); Curtis v. Salem Five Mortgage Co., LLC (In re Curtis), 359 B.R. 356 (1st Cir. BAP 2007). However, the "debtor's subjective feeling of coercion of harassment is not enough." Bates v. CitiMortgage, Inc., 2016 U.S. App. Lexis 22215, *7 (1st Cir. 2016).

-13-

The determination is fact specific and made on a case-by-case basis, as the line between forceful negotiation and improper coercion is not always clear. In re Pratt, 462 F.3d at 19; In re Schlichtmann, 375 B.R. at 95" In re Lumb, 401 B.R. at 6–7. An action is considered coercive when it is "tantamount to a threat." See Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 402 (1st Cir. 2002), or places the debtor "between a rock and a hard place." See Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227–228 (1st Cir. 2003). In determining whether an action is coercive, courts consider the "immediateness" of the threatened action and the context in which this action took place. In re Diamond, 346 F.3d at 227; See also: In re Bates v. Citimortgage, Inc., 2016 U.S. App. Lexis 22215, *8 ("We have no 'specific test' to determine whether a creditor's conduct meets this objective standard, but we consider the facts and circumstances of each case, including factors such as the 'immediateness of any threatened action and the context in which a statement is made'"). ".... A creditor violates the discharge injunction only if it acts to collect or enforce a prepetition debt; bad acts that do not have a coercive effect on the debtor do not violate the discharge." In re Lumb, 401 B.R. at 7 citing In re Schlichtmann, 375 B.R. at 97.

At this juncture, the Court clarifies that it will only consider (analyze) the alleged discharge violation as to the alleged March 10, 2020, collection letter because that is the one addressed in Treasury's *Motion for Summary Judgment* and as explained above Treasury submitted to the Court a certified translation in the English language of the same. In applying the three-prong test in the instant adversary proceeding, both parties agree that Treasury had actual notice of the discharge order, thus the first prong is satisfied. However, the parties disagree as to the second and third prongs of the test.

Plaintiffs contend that the March 10, 2020, is an explicit collection letter sent by Treasury which attempted to coerce them into making payments on the discharged debt and threatened legal consequences for failure to make such payments. Treasury's position is that it did not send collection letters via SURI demanding payment of the discharged debt. The only document sent by SURI is a Notification and Payment Requirement draft and the same was not issued because it was a draft. The Court notes that the March 10, 2020, Notice and Demand for Payment has a watermark with the word "DRAFT" in the Spanish language on all three (3) pages. (Docket No. 32-7).

The March 10, 2020, draft Notice and Demand for Payment reads in the following manner:

> "Dear Taxpayer,
>
> Our records reflect that you have an outstanding balance due related to the individual account, income tax in the amount of $72,725.35 for the tax periods indicated on the reverse side. We urge you to review the same and proceed as applicable below.
>
> **If you agree**:
> You should immediately remit payment electronically through SURI under the appropriate account to avoid further accrual of interest and surcharges.

You may also choose to request a payment plan. If the payment plan is less than $50,000 you can request it through your SURI account, and it will be approved instantly. In addition, you have the option of, regardless of the amount owed, visiting any of our collection districts around the island.

**If you do not agree:**
You must submit evidence at any of our Taxpayer Service Centers.
For the location of our Service Centers and Collection Districts, you may access www.hacienda.pr.gov.

**Failure to take action**:
If we do not receive payment or evidence that the debt is not owed, the Department will understand that you agree with what is stated in this notice and we will proceed to collect the debt using the mechanisms authorized by law.

**Warning**
This notice does not replace or invalidate previously sent notices for purposes of periods not covered by this notice. In addition, it does not include debts already notified for the same period, pending to be settled or in the process of investigation by the tax office as of the date of this notice.
If you need additional information or need to make a payment, please call (787) 622-0123 or (787) 620-2323."

(Docket Nos. 32-7, pg. 1 & 67-2. pg. 1).

Page 2 of the draft Notice and Demand for Payment includes a table with the income tax debts for the tax years 2009 through 2016, excluding tax year 2013. The total balance as of March 9, 2020, for these income tax debts, including principal, interest, surcharges, penalties, and fines was in the amount of $72,725.35.

The third page of this draft Notice and Demand for Payment letter includes an IMPORTANT NOTICE which reads as follows:

"The Department of Treasury has made a great effort to improve its electronic systems. Recently, the Treasury Department transferred the income tax account data from the previous digital platform to the new integrated SURI system. As part of this transfer, we have identified outstanding debts that may not have been previously notified. In order to comply with our responsibility to keep you informed, this notice is issued to inform you of the debt that was transferred to SURI. It is in our best interest to keep our tax system accurate and up to date, **so we urge you to review the information provided in this notice and tale the appropriate action as indicated on page one of this notice."** (emphasis Treasury).

(Docket Nos. 32-7 & 67-2).

The court finds that both parties agree that this collection letter was sent by Treasury to the Plaintiffs via email to their SURI account. The draft letter has in big capital letters the word

"BORRADOR" written conspicuously on the center of each of the three pages. There is nothing in the record (material undisputed facts) that indicates that after reviewing this information, the Plaintiffs contacted Treasury as was instructed in the letter to inform Treasury that the income tax debt had been discharged and had been paid through a bankruptcy proceeding that culminated in September 16, 2019. The draft letter also stated that if the taxpayer failed to take action, Treasury would understand that the taxpayer agrees with what is owed as stated in this notice and will proceed to collect the debt using mechanisms authorized by law. The Court finds that thereafter, Treasury did not send via SURI the Notification and Payment Requirement without the watermark that had the word "DRAFT" on each page to reaffirm its position. The Court further finds that the record is devoid that Treasury proceeded to collect on the discharged debt through the various mechanisms it has available such as notification of a lien or the actual recording of a lien on any of the Plaintiffs' real property or their bank accounts or through wage garnishment. After considering the facts and circumstances of this particular adversary proceeding such as the "immediateness of any threatened action and the context in which a statement is made," the Court holds that the Plaintiffs did not evince that Treasury improperly attempted to "coerce" them to pay a discharged debt or that Treasury threatened "immediate action" or that its conduct was "tantamount to a threat." Therefore, the Court concludes that the Debtors/Plaintiffs did not establish by clear and convincing evidence that Treasury violated the discharge injunction pursuant to 11 U.S.C. §524(a)(2).

Lastly, Treasury argues that, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm. In cases such as these where allegedly inaccurate or misleading information sits in a company database, the plaintiff's harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is. So too here." TransUnion LLC v. Ramírez, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021)." (Docket No. 32, pg. 12). The Court finds that Treasury's argument is circumscribed to the Plaintiffs' lack of Article III standing as to the alleged violation of the discharge injunction based on Treasury continuing report the discharged debt in the internal revenue system (SURI) for over a year after the discharge had been granted. At this juncture, the Court will not address this argument given that the Plaintiffs' Exhibits relating to the same were stricken from the record because the had not been duly certified to the English language. Moreover, the Court clarifies that in TransUnion LLC v. Ramírez, 141 S. Ct. 2190, 210 L. Ed. 2d 568, the Supreme Court held that: (i) the class action under the Fair Credit Reporting Act had standing under Article III of the U.S. Constitution to sue a credit reporting agency under 15 U.S.C. §1681e(b) for failing to use reasonable procedures to ensure the accuracy of credit files; and (ii) the class members' credit reports, which contained alerts as to the class members and were distributed to third parties, resulted in a concrete injury in fact. However, the remaining class members whose credit files contained misleading alerts but whose credit information was not

-16-

provided to any third parties lacked standing because the mere presence of an inaccuracy in an internal credit file, if it was not disclosed to a third party caused no concrete harm.

In the context of constitutional standing, the Supreme Court in Spokeo, Inc. v. Robins, 578 U.S. 330, 136 S. Ct. 1540 (2016) clarified that the injury-in-fact prong requires the plaintiff to show "that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. (quoting Spokeo, 136 S. Ct. at 1548). An injury is "particularized" if it "affect[s] the party invoking federal jurisdiction in a personal and individual way," while a "concrete injury must . . . actually exist." Id. (internal quotations and citations omitted). Further, the required injury "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." Lujan v. Defs. of Wildlife, 504 U.S. 555, 578, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal quotations and citations omitted). In other words, a party must have "a personal stake in the outcome of the controversy." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

In the instant proceeding, Treasury does not discuss whether the alleged violations to the discharge injunction under section 524(a)(2) failed to allege an injury that was both concrete and particularized or one of the other. Most importantly, the parties fail to discuss whether a statutory violation under 11 U.S.C. §524(a) is sufficient to constitute injury in fact. The Court notes that the Plaintiffs' allegations do not consist of a bare statutory violation, given that the Plaintiffs allege in the Complaint various damages resulting from the alleged discharge violations such as physical and emotional damages in the form of emotional distress, mental anguish, and extreme anxiety. (Docket No. 1, pgs. 10 &11).

For the reasons stated herein, the the Court concludes that Treasury did not violate the discharge injunction by emailing the March 10, 2020, "DRAFT" Notice and Demand for Payment. Plaintiffs remaining allegations of violation of the discharge injunction that constitute collection acts may not be reviewed given that the supporting documentation was not duly translated to the English language.

**Conclusion**

In view of the foregoing, Court grants in part and denies in part the *Motion for Judgment* filed by Treasury and denies the Plaintiffs' cross Motion for Summary Judgment.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of November 2022.

Enrique S. Lamoutte
United States Bankruptcy Judge

-17-